UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **THOMAS McKEITHAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-0086 (ESH)** |
| | ) | |
| **WILLIAM A. BOARMAN,** | ) | |
| **Public Printer, United States** | ) | |
| **Government Printing Office** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Thomas McKeithan has sued William Boarman[1] in his official capacity as Public Printer

for the Government Printing Office, alleging violations of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 621 *et seq.* Boarman has moved to dismiss McKeithan's claims under Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted. (Mot. to Dismiss the Am.

Compl. (Def.'s Mot.) at 1.) For the following reasons, defendant's motion will be granted.

### BACKGROUND & PROCEDURAL HISTORY

McKeithan worked for the Government Printing Office ("GPO") for more than forty-two

years, where he developed a "fine work record and an excellent reputation." (Am. Compl. ¶ 3.)

McKeithan alleges that this sterling record was tarnished because of his supervisor, Randy

Wilson. (*Id.*) McKeithan spoke with Wilson several times about the "errors of sexually

harassing women in the workplace and the offensive effect of such behavior on the plaintiff"

---

[1] McKeithan originally sued Paul Erickson, Boarman's predecessor. (Compl. at 1.)
Pursuant to Fed. R. Civ. P. 25(d), Boarman has been automatically substituted as the defendant.

and, when Wilson "seemed to ignore" these requests, McKeithan "complained" to Alphonzo

Woods, who supervised both McKeithan and Wilson. (*Id.* ¶¶ 6-7.) Woods assured McKeithan

that "he spoke to Mr. Wilson in strong language about stopping his inappropriate sexually

harassing behavior." (*Id.* ¶ 8.) After McKeithan made these complaints, in August 2009, Wilson

"called over" to McKeithan to "see his new cell phone," which displayed a "photograph of a

nude woman in a pornographic pose." (*Id.* ¶ 9.) McKeithan told Wilson that "he was not

interested in such behavior," even though, according to McKeithan, Wilson already knew that

the photo was "objectionable." (*Id.* ¶¶ 10, 13.) McKeithan reported the incident to Wilson's

supervisors, to the GPO police, to the office of Human Resources, and to the GPO Office of

Inspector General. (*Id.* ¶ 14.) As a result, Wilson was disciplined. (*Id.* ¶ 16.)

McKeithan alleges that two days after he reported Wilson's conduct, Wilson falsely

accused him of "unprofessional and discourteous conduct toward another supervisor." (*Id.* ¶ 17.)

McKeithan was subsequently disciplined for the first time in his career. (*Id*. ¶¶ 17, 20.)

McKeithan also complained to his supervisors that Wilson told him that Wilson's wife

"monitor[ed] the movements of GPO employees who worked for her husband." (*Id.* ¶ 21.) Next,

Wilson told one of McKeithan's co-workers that he planned to call McKeithan's wife and falsely

inform her about an affair McKeithan was having. (*Id.* ¶ 22.) A month later, McKeithan was

given a rating of "Meets Expectations," after years of receiving consistently "Outstanding"

ratings. (*Id.* ¶¶ 25-26.) That same month, McKeithan was moved to a new office building. (*Id.*

¶ 28.) McKeithan's office was moved six times in the following months, at Wilson's behest.

(*See id.*) Wilson also placed restrictions on McKeithan's ability to visit the personnel office and

imposed other unusual requirements on McKeithan. (*Id.* ¶¶ 32-34.) As a result, McKeithan

retired. (*Id.* ¶ 38.)

In February 2010, McKeithan contacted a counselor in the Office of Equal Employment Opportunity ("EEO") and complained about Wilson's actions. (*Id.* ¶ 42.) On April 1, 2010, he filed a formal EEO complaint that alleged discrimination on the basis of sex, age, and religion, but did not formally make a claim of retaliation. (*Id.*) On April 6, 2010, the EEO accepted his complaint for processing. (Def.'s Mot., Ex. B, at 1.)[2] However, in its order accepting his complaint for investigation, the EEO identified only McKeithan's age-related discrimination claim, and advised that if McKeithan "believe[d] the claim in this complaint has not been correctly identified," he was to contact the EEO within ten days and "specify why [he] believe[d] the claims have not been correctly identified." (*Id.*) The EEO warned McKeithan that "if [he] fail[ed] to contact" the investigator, he would "conclude that [McKeithan] agree[d] that the claims have been properly identified." (*Id.*) On October 24, 2010, McKeithan signed an affidavit provided by an EEO investigator in which he affirmed that the "accepted issue[] for investigation" was his age-related discrimination claim. (Def.'s Mot., Ex. C, at 1.) In this affidavit, McKeithan stated that he believed he "was discriminated and subjected to a hostile work environment based on my age because none of the younger people" were treated in the way that he was. (*Id.* at 5.)

McKeithan filed suit on January 13, 2011. (Compl. at 1.) After answering McKeithan's complaint, Boarman moved to dismiss on May 25. (Dkt. No. 11.) While this motion was

---

[2] McKeithan argues that it would be inappropriate for the Court to consider this exhibit because he did not rely upon it in drafting his Complaint. (Pl.'s Opp'n at 7 n.2.) However, the Court may consider documents that are a matter of public record without converting a motion for dismissal into a motion for summary judgment. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Because the documents involved in the EEO proceedings and attached by Boarman as Exhibits A, B and C are matters of public record, the Court may consider them at this point. *See Green v. Small*, No. 05-1055, 2006 WL 148740, at *6 n.4 (D.D.C. Jan. 19, 2006); *see also Uzlyan v. Solis*, 706 F. Supp. 2d 44, 55 & n.5 (D.D.C. 2010) (considering transcript of proceedings before administrative law judge in deciding 12(b)(6) motion).

pending, McKeithan filed a consent motion requesting permission to amend his complaint to add

"factual bases for holding Defendant responsible for unlawful acts of retaliation" (Pl.'s Mot. for

Leave to File an Am. Compl. [Dkt. No. 16] at 4-5), which the Court granted on June 27.

McKeithan's amended complaint was filed on June 28. (Am. Compl. (Dkt. No. 17).) Because

the filing of a new complaint rendered Boarman's motion to dismiss moot, the Court denied it

without prejudice. (Mem. Op. & Order, July 7, 2011 (Dkt. No. 19).) Boarman has now re-filed

his motion to dismiss. (Def.'s Mot. to Dismiss the Am. Compl. ("Def.'s Mot.").)

## ANALYSIS

### I.      STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face,'" such that a court may "draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In ruling on a 12(b)(6) motion, a court may

consider facts alleged in the complaint, documents attached to or incorporated in the complaint,

matters of which courts may take judicial notice, and documents appended to a motion to dismiss

whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim.

*U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20, 24-25 (D.D.C. 2010).

### II.     FAILURE TO EXHAUST (CLAIMS I-III)

Boarman argues that McKeithan failed to exhaust his gender and religious discrimination

claims and his retaliation claim because he did not contest the EEO's finding that he had only

raised a valid age discrimination claim. (Def.'s Mot. at 7-8.) A plaintiff alleging a violation of

his civil rights by a federal agency under Title VII must "initiate his . . . complaint with the

agency."[3]  *Kizas v. Webster*, 707 F.2d 524, 544 (D.C. Cir. 1983).  Moreover, the EEO has

"established detailed procedures for the administrative resolution of discrimination complaints"

which "[c]omplainants must timely exhaust . . . before bringing their claims to court."  *Bowden*

*v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

McKeithan admits that he did not include retaliation as a claim in his EEO complaint

(Compl. ¶¶ 39-41), and he does not argue that his administrative complaint could be interpreted

to raise a retaliation claim.  (*See generally* Pl.'s Opp'n.)  He does, however, argue that he

"exhausted his Claims based on Sex and Religion," but he supports this novel and unsupported

argument by asserting that the EEO lacks the authority to frame the issues he raised in his

administrative complaint.  (*Id.* at 8-11.)  But the simple fact that the EEO's process is not "set by

Congress or by a single court" (Pl.'s Opp'n at 8) does not make it irrelevant.  "Compliance with

the administrative procedures is required."  *Chaple v. Johnson*, 453 F. Supp. 2d 63, 69 (D.D.C.

2006) (granting summary judgment to the government where plaintiff failed to seek EEO

counseling within 45 days of an adverse employment action, as required by EEO regulations).

The Court cannot simply "permit a litigant to bypass the Title VII administrative process."  *Park*

*v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  Thus, "[d]ismissal is required when a

plaintiff fails to exhaust his administrative remedies with respect to particular claims."  *Ndondji*

*v. InterPark, Inc.*, 768 F. Supp. 2d 263, 276-77 (D.D.C. 2011).  As explained herein, McKeithan

failed to follow the administrative process and, therefore, arguably failed to exhaust his claims.

---

[3] The same exhaustion requirement applies to claims brought under the Age
Discrimination in Employment Act.  *See Wash. v. Wash. Metro. Area Transit Auth.*, 160 F.3d
750, 752 (D.C. Cir. 1998) ("Before suing under either the ADEA or Title VII, an aggrieved party
must exhaust his administrative remedies").

In response, McKeithan argues that the EEO failed to follow its own procedures by omitting his other claims in the notice accepting his complaint because he met all timing requirements and because it failed to identify the reasons for "dismissing both the sex and the religion claims." (Pl.'s Opp'n at 10-11.) However, McKeithan did not challenge the EEO's letter when he received it. In effect, he abandoned his religious discrimination, gender discrimination, and retaliation claims at the administrative level and thereby failed to exhaust them. This conclusion is consistent with the decisions of other courts that have confronted this or similar issues. For instance, courts have generally held that "failure to respond to the framing of the issue supports a finding that" a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO. *See Sellers v. Dep't of Def.*, No. 07-418S, 2009 WL 559795, at *11-*12 (D.R.I. Mar. 4, 2009); *Silver v. Leavitt*, No. 05-0968, 2006 WL 626928, at *9 (D.D.C. Mar. 13, 2006) (plaintiff failed to exhaust remedies with respect to claims that "were not accepted for investigation at the administrative level"); *Green*, 2006 WL 148740, at *5-*6 (plaintiff had not exhausted retaliation claims when he failed to include them in his initial complaint and "made no attempt to augment the 'accepted allegation' or amend his complaint prior to the conclusion of the investigation . . . despite the . . . express invitation to do so"); *Robinson v. Chao*, 403 F. Supp. 2d 24, 29 (D.D.C. 2005) (plaintiff who made claims of discrimination in her administrative complaint "had an obligation to respond to reasonable requests in the course of the agency's investigation of her discrimination claims," but failed to do so and therefore "did not exhaust her administrative remedies concerning those claims"); *Clayton v. Rumsfeld*, No. SA-02-CA-231, 2003 WL 25737889, at *3 (W.D. Tex. Aug. 8, 2003) ("[f]ailure to object to the framing of the issue by the EEOC and the ALJ constitutes an abandonment of the claim"). As was the case with these plaintiffs, McKeithan failed to "expand the administrative

investigation of his complaint." (Def.'s Reply at 16.)  There is no dispute that McKeithan was

on notice that only his age-related discrimination claim had been accepted for investigation by

the EEO.  (*See* Def.'s Mot., Ex. C at 1.)  He made no effort to amend or alter this decision,

despite being told to do so.  (*See* Def.'s Mot., Ex. B at 1.)  Moreover, he signed an affidavit in

which he stated that he was discriminated against and subjected to a hostile work environment

"based on [his] age."  (Def.'s Mot., Ex. C at 5.)

Given these undisputed facts, McKeithan arguably abandoned these claims at the

administrative level by failing to contest the EEO's framing of his complaint and by

affirmatively stating that the actions taken against him were because of his age.  While this may

well constitute ground for dismissal under Rule 12(b)(6),[4] the Court is hesitant to adopt such a

rigid position in this case, particularly because it is unnecessary for it to rest its decision on these

grounds, because plaintiff's claims for gender or religious discrimination or for retaliation are

deficient as a matter of law.

### III.    FAILURE TO ALLEGE HOSTILE WORK ENVIRONMENT BASED ON GENDER, RELIGION, OR AGE (COUNTS I, II, and IV)

Even if one assumes *arguendo* that McKeithan exhausted his claims based on gender and

religious discrimination, the Court would dismiss them because he has failed to allege the

existence of a hostile work environment based on his membership in either protected class.

Although a plaintiff need not plead a *prima facie* case of hostile work environment in the

complaint, the "alleged facts must support such a claim."  *See Middlebrooks v. Godwin Corp.*,

---

[4] Although there has been some confusion in this jurisdiction regarding "whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim," recent cases "favor treating failure to exhaust as a failure to state a claim." *Hansen v. Billington*, 644 F. Supp. 2d 97, 102 (D.D.C. 2009) (collecting cases); *see also Kilby-Robb v. Spellings*, 309 F. App'x 422, 423 n.1 (D.C. Cir. 2009) (mandatory exhaustion requirement was not jurisdictional).

722 F. Supp. 2d 82, 90-91 & n.6 (D.D.C. 2010) (quoting *Ervin v. Howard Univ.*, 562 F. Supp. 2d 58, 70 (D.D.C. 2008)).  To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The Court looks at the "totality of the circumstances," including whether the comments or actions at issue "expressly focused" on the plaintiff's protected class, in order to "determine whether a hostile work environment exists." *Id.*

Title VII is not a "general civility code for the American workplace."  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  Thus, "[c]ourts in this jurisdiction have routinely held that hostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class."  *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) (collecting cases); *see also Kelley v. Billington*, 370 F. Supp. 2d 151, 157 (D.D.C. 2005) ("Moreover, it must be clear that the hostile work environment was the result of discrimination based on a protected status.").  McKeithan attempts to meet this burden by alleging that: 1) Wilson harassed women (Compl. ¶¶ 5-6); 2) Wilson showed McKeithan a pornographic photograph (*id.* ¶ 9); and 3) Wilson conducted a campaign of psychological intimidation against McKeithan at the office.  While Wilson's conduct may well have been "unjustified" or "egregious," this behavior does not appear to be connected in any way to McKeithan's religious beliefs, gender, or age.  *See Na'im*, 626 F. Supp. 2d at 73.

McKeithan must show that the discriminatory conduct he alleges "was not 'merely tinged' with remarks abhorrent to [his] religion but actually was, in either character or substance, discrimination *because of religion*." *Rivera v. P.R. Aqueduct and Sewer Auth.*, 331 F.3d 183, 189-91 (1st Cir. 2003). Although McKeithan's complaint suggests that Wilson was aware of his religious beliefs (Compl. ¶¶ 11-13), it does not allege any facts linking McKeithan's religion to any discrimination. Indeed, the complaint alleges that McKeithan and Wilson had "repeatedly discussed their religious beliefs, including the similarities in the quest of each to live morally proper lives," suggesting that the two, in fact, had bonded over their shared religious goals. (Compl. ¶ 11.) McKeithan has utterly failed to show that the alleged discriminatory conduct was even "tinged with remarks abhorrent to [his] religion," let alone that there was "in either character or substance, discrimination *because of religion*." *Rivera*, 331 F.3d at 189-91 (summary judgment against plaintiff was appropriate despite "antics" by plaintiff's coworkers "apparently meant to offend her" because antics "while deplorable, [did] not amount to a violation of Title VII"). At most, McKeithan alleges that Wilson acted in a way that he found to be offensive to his personal religious beliefs. If Title VII could support such a claim, it would become the very "general civility code" that the Supreme Court has cautioned against, *see Oncale*, 523 U.S. at 80, for it would require the courts and the EEO to interpret and enforce every person's individual sensibilities. Neither the text of Title VII nor the relevant case law supports such an unjustified and unwieldy expansion of the law. Thus, McKeithan has failed to state a claim for religious discrimination.

McKeithan similarly fails to allege facts establishing that any of Wilson's conduct, including showing photos of a nude woman to him, were "act[s] of sexual harassment." (Pl.'s Opp'n at 13.) To establish a claim of illegal same-sex harassment, a plaintiff "must always

9

prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Cromer-Kendall v. District of Columbia*, 326 F. Supp. 2d 50, 56 (D.D.C. 2004) (quoting *Oncale*, 523 U.S. at 81). Although McKeithan correctly suggests that the law recognizes that a "male could be the victim of sex harassment even if the harasser was also male" (Pl.'s Opp'n at 13 n.6), he does not link his gender to any of the hostile conduct that he encountered, and he fails to allege that anything Wilson did actually constituted gender discrimination. McKeithan alleges that he suffered as a result of his supervisor's actions, and that he is a member of a protected class. However, he has failed to allege any facts that would support a claim of linkage between the two that is plausible on its face. Thus, even if McKeithan had exhausted his claims for discrimination based on gender or religion, Counts I and II fail, as a matter of law, to allege the existence of a hostile work environment.

For these same reasons, McKeithan's claim that he suffered a hostile work environment based on age discrimination must also be dismissed, even though this claim was properly exhausted. (Def.'s Mot. at 7.) McKeithan offers nothing to support a claim that any of Wilson's conduct was linked to his age, and he fails to offer any evidence or argument that would suggest that he was exposed to discriminatory intimidation, ridicule, or insult because of his age. Again, McKeithan alleges only that he suffered as a result of Wilson's hostile behavior. "The Court is left to infer that each act was discriminatory or retaliatory simply based on the fact" that he is over sixty. *Hunter v. District of Columbia*, No. 09-1491, 2011 WL 2751008, at *6 (D.D.C. July 15, 2011) (dismissing claim for hostile work environment). Since McKeithan has failed to

10

present a plausible claim that he was subjected to a hostile work environment based on his age, Count IV will be dismissed.[5]

## IV.   FAILURE TO ALLEGE RETALIATION (COUNT III)

Although it is clear that McKeithan failed to exhaust his retaliation claim, this claim would also fail as a matter of law because plaintiff has failed to demonstrate that he engaged in statutorily protected activity. Although McKeithan need not allege all the "elements of a prima facie case of retaliation, he must plead sufficient factual allegations that together demonstrate 'plausibility.'" *Bryant v. Pepco*, 730 F. Supp. 2d 25, 30-31 (D.D.C. 2010) (plaintiff had plausibly alleged retaliation where he attended meetings that "concerned allegations of racial discrimination"). As Boarman correctly argues, McKeithan has failed to identify any "statutorily protected activity" that he engaged in and, therefore, his claim for relief is not plausible. (*See* Def.'s Reply at 10.) Under Title VII, "protected activity" consists, in relevant part, of acts opposing "any practice made an unlawful practice by this subchapter." *Crawford v. Metro. Gov't of Nashville*, 129 S. Ct. 846, 850 (2009). The Circuit has held that a plaintiff failed to show that he participated in "statutorily protected activity" where he had opposed a "single comment by one co-worker to another," even though the comment was virulently racist, because "no rational jury could find [plaintiff's] belief" that he was opposing "an unlawful employment practice to be objectively reasonable." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959-60 (D.C. Cir. 1997). Although McKeithan alleges that he complained to Wilson about

---

[5] Although McKeithan has not listed it separately in his complaint, it is clear that he also claims that he was constructively discharged as a result of the hostile work environment. (*See* Compl. ¶¶ 38-39.) However, "[t]o establish 'constructive discharge,' the plaintiff . . . must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 134 (2004). Thus, because McKeithan has failed to show that his working environment was hostile, he cannot establish that he was constructively discharged. *Sewell v. Hugler*, No. 08-5079, 2009 WL 585660, at *1 (D.C. Cir. Feb. 25, 2009).

his behavior around women (Compl. ¶¶ 5-8), he only alleges retaliation connected to his complaint about the August 2009 cell phone incident. (*See id.* ¶¶ 9-17.) Unlike the plaintiff in *Bryant*, McKeithan does not suggest that he believed Wilson was discriminating against anyone or violating Title VII by displaying an offensive photograph. (*Compare* Compl. ¶¶ 9-16 *with Bryant*, 730 F. Supp. 2d at 31.) Nor could this single incident "reasonably be thought to constitute an abusive working environment in violation of Title VII." *See George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005). Therefore, McKeithan's complaint "did not constitute 'oppos[ition]' to a 'practice made . . . unlawful' by Title VII." *Id.*

In essence, McKeithan complains about an act that he found personally offensive, rather than an "unlawful practice" under Title VII, and, therefore, he has failed to state a claim for retaliation. Thus, even if this claim had been properly exhausted, it would be dismissed under Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, the Court will grant Boarman's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:    August 17, 2011